UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**BRING OUR STREETCARS HOME INC.,** *et al*    **CIVIL ACTION**

**VERSUS**    **CASE NO. 15-60**

**UNITED STATES DEPARTMENT OF**    **SECTION: "G"(3)**
**TRANSPORTATION,** *et al*

## ORDER

Pending before the Court is Defendants United States Department of Transportation ("DOT"), Federal Transit Administration ("FTA"), and Federal Emergency Management Agency's ("FEMA") (collectively, "Federal Defendants") "Motion for Summary Judgment."[1] Having considered the motion, the memoranda in support and in opposition, the applicable law, and the record, the Court will grant the motion.

## I. Background

### A.    *Factual Background*

This litigation arises out of the proposed restoration of a traditional streetcar line along North Rampart Street and St. Claude Avenue in New Orleans, Louisiana known as the Rampart Street rail spur ("the Rampart Spur").[2] The Complaint in this matter was filed on January 12, 2015 by Bring Our Streetcars Home, Inc., The People's Institute for Survival and Beyond, Inc., George Schmidt, Leo Boekbinder, Judy Filipich, Martha Owen, Melanie Owen, Justin Winston, Gordon Peter Wilson, Grayhawk Perkins, Larry Martin, Terri V. Bates, and Mercedes

---

[1] Rec. Doc. 48.

[2] Rec. Doc. 1 at pp. 7–8.

1

Whitecloud (collectively, "Plaintiffs").[3] Plaintiffs allege that the Regional Transit Authority of New Orleans ("RTA") and Transdev Services, Inc. ("Transdev") (collectively, "Local Defendants") intend to excavate significant portions of the roadway and neutral ground along North Rampart Street, where "a wealth of historical treasures including ancient forts, city walls, culturally and religiously significant artifacts and grave sites are located and where street flooding complications will result."[4]

In their Complaint, Plaintiffs bring three causes of action. First, they allege that they have not been consulted about the Rampart Spur, in violation of section 106 of the National Historic Preservation Act ("NHPA").[5] Second, Plaintiffs allege that the DOT has not undertaken the consultation and coordination process required by Section 4(f) of the Department of Transportation Act of 1996 ("DOTA").[6] Third, Plaintiffs allege that the Federal Defendants have failed to issue an Environmental Impact Statement or consult with Native American tribes, as required by the National Environmental Policy Act ("NEPA") and related regulations.[7]

Plaintiffs request that this Court order: (1) DOT, FTA, and FEMA to "fully complete the historic preservation reviews of the Rampart Spur prescribed under 36 C.F.R. § 800;" (2) "DOT to implement the review process mandated by 23 U.S.C. § 138, 49 U.S.C. § 303 and DOT Order 5301.1"; and (3) DOT, FTA, and FEMA to "conduct the review mandated by the NEPA and

---

[3] *Id.* at p. 2.

[4] *Id.* at p. 12.

[5] *Id.* (citing 16 U.S.C. § 470(w)(7)).

[6] *Id.* at pp. 13–14 (citing 23 C.F.R. § 774).

[7] *Id.* at pp. 14–16 (citing 42 U.S.C. § 4321; 40 C.F.R. 1501.2(d)(2); 40 C.F.R. 1508.18)).

issue, if appropriate, Environmental Impact Statements prescribed under 40 C.F.R. § 1502."[8] In their complaint, Plaintiffs also requested that the Court issue a temporary restraining order and preliminary and permanent injunctions, thereafter, enjoining Local Defendants from implementing the Rampart Spur, "until such time as the requisite reviews under federal law are completed and corresponding reports [are] issued."[9]

## B.     Procedural Background

Plaintiffs filed the complaint in this matter on January 12, 2015.[10] On January 16, 2015, after conducting a hearing on Plaintiffs' motion for a temporary restraining order, the Court denied the motion.[11] On January 17, 2015, Plaintiffs submitted a "Notice of Dismissal" of all claims against Local Defendants pursuant to Federal Rule of Civil Procedure 41(a).[12] On February 10, 2015, the Court held a status conference and based upon the representations made by both parties, the Court continued the trial date.[13] On June 12, 2015, Federal Defendants filed a motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim,[14] which the Court denied on December 29, 2015.[15]

---

[8] *Id.* at p. 17.

[9] *Id.*

[10] Rec. Doc. 1.

[11] Rec. Doc. 20.

[12] Rec. Doc. 21.

[13] Rec. Doc. 30.

[14] Rec. Doc. 34.

[15] Rec. Doc. 44.

Federal Defendants filed the pending motion on February 2, 2016.[16] On February 8, 2016, the parties jointly moved to continue the trial date and resolve the instant matter on cross-motions for summary judgment.[17] The Court denied the motion on February 8, 2016,[18] but at a status conference on February 16, 2016, the Court agreed to continue the submission date on Federal Defendants' motion for summary judgment from February 16, 2016 until March 2, 2016, to give Plaintiffs additional time to conduct discovery.[19] Plaintiffs filed an opposition to the pending motion on February 23, 2016.[20] With leave of Court, on March 2, 2016, Federal Defendants filed a reply memorandum.[21]

## II. Parties' Arguments

### A.   *Federal Defendants' Arguments in Support of Summary Judgment*

In support of summary judgment, Federal Defendants argue that each of Plaintiffs' causes of action should be dismissed because the Rampart Spur is being constructed by the RTA, not Federal Defendants, and therefore the project is not a major federal action or a federal undertaking.[22] Without any federal involvement, Federal Defendants aver, Plaintiffs cannot state a cognizable claim against them under NEPA, the NHPA, or Section 4(f).[23]

---

[16] Rec. Doc. 48.

[17] Rec. Doc. 50.

[18] Rec. Doc. 51.

[19] Rec. Docs. 52, 53.

[20] Rec. Doc. 54.

[21] Rec. Doc. 57.

[22] Rec. Doc. 48-1 at p. 1.

[23] *Id.*

According to Federal Defendants, although Plaintiffs allege that the RTA has used or is using federal grant money from the DOT, FTA, and FEMA to construct the Rampart Spur, FEMA and DOT have never provided funding for past or current projects along the Rampart Spur.[24] Furthermore, Federal Defendants argue, the FTA merely funded studies of a separate project from 1998 to 2003, a portion of which overlaps with the Rampart Spur.[25] However, Federal Defendants allege, the FTA has not provided any funding to that earlier proposed project—the Desire Streetcar project—since 2003, and is not providing any funding for the current Rampart Spur.[26]

Federal Defendants claim that, from 1998 to 2003, the FTA awarded grant money to the RTA for various studies of the Desire Streetcar project, including money for a Major Investment Study, as well as preliminary engineering and environmental impact studies.[27] However, Federal Defendants argue, the project ultimately was not recommended by the FTA, and the RTA suspended further development of the project in September 2005, officially withdrawing its request for federal funding on March 11, 2011.[28] According to Federal Defendants, the FTA has not approved any requests or applications for funding related to the current Rampart Spur project at issue in the Plaintiffs' complaint, nor has it worked with the RTA on the Desire Streetcar project since 2002–2003.[29] At that time, Federal Defendants aver, environmental and historic

---

[24] *Id.* at p. 2.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

preservation reviews under NEPA and the NHPA for the Desire Streetcar project were terminated, and the FTA did not make any final findings.[30]

Federal Defendants claim that after Hurricane Katrina, FEMA provided the RTA with funding for disaster-related damages to the Riverfront Streetcar Line and the Canal Street Streetcar Line in order to return them to their pre-hurricane capabilities.[31] At that time, Federal Defendants argue, FEMA complied with the applicable environmental and historic preservation requirements related to this funding, and FEMA did not provide funding for the Desire Streetcar project or the current Rampart Spur, neither of which would have been eligible for the funding.[32]

According to Federal Defendants, DOT's involvement in the Rampart Spur was limited to repeatedly *not* funding it or related projects.[33] Federal Defendants claim that, in September 2009, the RTA applied to the DOT for $95,627,572 in Transportation Investment Generating Economic Recovery ("TIGER") grant funds, but on February 17, 2010, DOT awarded the RTA $45 million in TIGER funds specifically directed toward expanding the streetcar along Loyola Avenue to the Union Passenger Terminal, not the Rampart Spur.[34] Federal Defendants aver that the FTA complied with NEPA and the NHPA for the Loyola Avenue project.[35] Federal Defendants claim that in July 2010, the RTA adopted a plan to fund the Rampart Spur using only local funds, though the RTA continued to request federal TIGER funding for the Rampart Spur

---

[30] *Id.*

[31] *Id.* at p. 3.

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

or projects related to it from 2011 to 2014.[36] According to Federal Defendants, however, none of the RTA's proposals for the Rampart Spur or related projects were selected by the DOT for TIGER funding, and thus, in sum, neither FTA, nor FEMA, nor DOT approved any requests or applications from the RTA for federal funding regarding the current Rampart Spur project.[37]

Federal Defendants argue that, in order for Plaintiffs to prevail on their NEPA, NHPA, and Section 4(f) claims, the federal government must have some involvement in the current Rampart Spur project; here, however, they claim, the project is being completed without any federal funding or supervision, authorization, commitment, or control whatsoever.[38] According to Federal Defendants, NEPA requires that federal agencies consider the environmental consequences of "major Federal actions significantly affecting the quality of the human environment."[39] Federal Defendants argue that although there is no litmus test to determine what constitutes a "major federal action," NEPA clearly does not apply to state, local, or private actions.[40] According to Federal Defendants, major federal action encompasses not only actions by the federal government, but also actions by nonfederal actors "with effects that may be major and which are potentially subject to Federal control and responsibility."[41] However, Federal Defendants aver, the fact that the federal government once participated in the development does

---

[36] *Id.*

[37] *Id.*

[38] *Id.* at p. 4.

[39] *Id.* at p. 6 (citing *Save Barton Creek Ass'n v. Fed. Highway Admin.*, 950 F.2d 1129, 1133–34 (5th Cir. 1992) (quoting 42 U.S.C. § 4332(2)(C))).

[40] *Id.* (citing *Save Barton Creek*, 950 F.2d at 1134; *Atlanta Coal. on Transp. Crisis, Inc. v. Atlanta Reg'l Comm'n*, 599 F.2d 133, 1344 (5th Cir. 1979); *Berthelot v. Boh Bros. Const. Co.*, 2006 WL 2256995, at *7 (E.D. La. July 19, 2006) (Duval, J.)).

[41] *Id.* at pp. 6–7 (citing 40 C.F.R. § 1508.18 (1991); *Save Barton Creek*, 950 F.2d at 1134).

not necessarily render that development forever federal for purposes of subjecting it to NEPA.[42] Here, Federal Defendants argue, Plaintiffs have not demonstrated any federal involvement in the Rampart Spur that would rise to the level of a "major federal action," and therefore their NEPA claim fails as a matter of law and must be dismissed.[43]

Next, Federal Defendants argue, the NHPA "requires each federal agency to take responsibility for the impact that its activities may have upon historic resources."[44] According to Federal Defendants, NHPA has a "federal undertaking" requirement similar to NEPA's "major federal action" requirement.[45] Therefore, Federal Defendants claim, the FTA's limited involvement in the Desire Streetcar project studies more than a decade ago do not constitute a federal undertaking under the NHPA, and thus Plaintiffs' NHPA claims fail as a matter of law.[46]

Federal Defendants argue that Plaintiffs' claim pursuant to Section 4(f) of the Department of Transportation Act of 1966, which bars federal approval of a transportation project that will use a public park, recreational area, or historic site unless there is no prudent and feasible alternative to use such land, and requires that the agency take all measures to minimize the harm, similarly fails.[47] According to Federal Defendants, like NEPA and the NHPA, Section 4(f) does

---

[42] *Id.* at p. 7 (citing *City of Boston v. Volpe*, 464 F.2d 254, 258 (1st Cir. 1972); *City of Eufaula, Ala., v. Ala Dep't of Transp.*, 71 F. Supp. 3d 1272, 1278 (M.D. Ala. 2014)).

[43] *Id.*

[44] *Id.* at p. 8 (quoting *Coliseum Square Ass'n , Inc. v. Jackson*, 465 F.3d 215, 223 (5th Cir. 2006)).

[45] *Id.*

[46] *Id.*

[47] *Id.* at p. 9 (citing *Riverfront Garden Dist. Ass'n v. City of New Orleans*, 2000 WL 35801851, at *10 (E.D. La. Dec. 11, 2000); *Citizens Against Burlington, Inc. v. Busey*, 938 F.2d 190, 202 (D.C. Cir. 1991)).

not apply to locally funded projects, and therefore likewise cannot apply to Federal Defendants in this case, who had no involvement in the Rampart Spur.[48]

Federal Defendants argue that, in order to defeat summary judgment, Plaintiffs have the burden to come forward with specific, articulable facts indicating that Federal Defendants had the requisite level of involvement in the Rampart Spur project.[49] Because they cannot do so, Federal Defendants aver, their NEPA, NHPA and Section 4(f) claims fail as a matter of law and summary judgment should be entered in favor of Federal Defendants.[50]

**B.      *Plaintiffs' Arguments in Opposition to Summary Judgment***

In opposition, Plaintiffs argue that the motion should be denied because "statements of material fact furnished by the defense, and the declarations made by defense witnesses, contain genuine issues of material fact germane to this case and the issues it presents."[51] Furthermore, Plaintiffs claim, attempts at discovery have been unavailing because all deponents lack specific knowledge of the issues at hand and documents essential to the Plaintiffs' case had not yet been produced.[52]

Plaintiffs contend that the first paragraph of Federal Defendants' Statement of Uncontested Material Facts reveals that the FTA awarded grant money to the RTA, including funds for a "major investment" study.[53] Furthermore, Plaintiffs aver, the Declaration of Laura C.

---

[48] *Id.* at pp. 9–10.

[49] *Id.* at p. 10.

[50] *Id.* at p. 11.

[51] Rec. Doc. 54 at p. 1.

[52] *Id.*

[53] *Id.* at pp. 1–2.

Wallace further reveals that the FTA awarded a grant to the RTA in 2000 "in the amount of $3,478,630 for preliminary engineering/environmental impact study for the Desire Streetcar Line Project."[54] Plaintiffs contend that additional grants of $500,000 and $1,188,016 in 2001 and 2003, respectively, were also awarded.[55] According to Plaintiffs, the FTA's issuance of grant money for a streetcar project in the same area as the Rampart Spur is a central issue in this case, and the Federal Defendants' claims that the FTA grants were for another, unrelated streetcar project are disputed.[56] Plaintiffs aver that their claims should be fully explored through discovery and presented to the Court at trial, and cannot be subject to judgment as a matter of law.[57]

Plaintiffs claim that on February 19, 2016, they had the opportunity to depose three witnesses who had previously given declarations on behalf of the Federal Defendants.[58] However, Plaintiffs aver, in each deposition, the deponent was unable to answer questions relating to central issues in the case, as each witness's tenure at his or her respective agency began long after the events in question took place.[59] For example, Plaintiffs contend, Albert Walters was asked about events referenced in his declaration that occurred in 2006, 2007, and 2009, but Walters was not able to provide answers to some of the questions because he began working in his position in 2013.[60] Similarly, Plaintiffs contend, Jeramé Cramer, who was also

---

[54] *Id.* at p. 2.

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.*

[60] *Id.* at pp. 2–3.

deposed, was asked about events referenced in his declaration that occurred in 2009, but was not able to provide answers to some questions because he began working in his position in 2014.[61] Likewise, Plaintiffs allege, Laura Wallace was asked about events referenced in her declaration that occurred in the year 2000, but was not able to provide answers to some questions because she began working in her position in 2002.[62]

Furthermore, Plaintiffs argue, documentary evidence requested in Plaintiffs' notices of deposition have only partially been produced, specifically documents pertaining to the allocation of grant funds promulgated by the FTA and information about what is meant by "preliminary engineering," which Plaintiffs argue are necessary and indispensable in proving their case.[63] Plaintiffs aver that the lack of information gained in discovery means that they cannot articulate the facts essential to justify why Federal Defendants' motion should not be granted, and pursuant to Federal Rule of Civil Procedure 56(d)(1), when facts are unavailable to the non-movant, the Court may elect to defer considering the pending motion, or deny it.[64]

At this stage of discovery, Plaintiffs claim, it is "known and undisputed . . . that the FTA did provide $5,166,646 in grant money to the New Orleans RTA for the 'preliminary engineering' of a streetcar line project to be located where the Rampart Spur is now being constructed."[65] However, Plaintiffs argue, the deponents did not know what "preliminary engineering" meant or how the grant money was spent, and documents from that period

---

[61] *Id.* at p. 3.

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Id.*

delineating the use of grant funds were not immediately available.[66] Therefore, Plaintiffs argue, genuine, disputed issues of material fact remain, precluding summary judgment.[67]

## C.     *Federal Defendants' Arguments in Further Support of Summary Judgment*

Federal Defendants first argue that their statement of uncontested material facts should be deemed admitted in accordance with Local Rule 56.2, which requires a party opposing summary judgment to file a "separate and concise statement of the material facts which the opponent contends present a genuine issue."[68] According to Federal Defendants, Plaintiffs spent three paragraphs of their opposition discussing the Federal Defendants' statement of uncontested material facts, but did not specifically dispute any of the Federal Defendants' alleged facts, nor any of their statements regarding FEMA or the DOT.[69] Federal Defendants contend that this Court has previously found that a plaintiff's failure to file a separate statement complying with the requirements of Rule 56.2 means that all facts presented in a defendant's statement of uncontested material facts are deemed admitted.[70]

Here, Federal Defendants contend, it is undisputed that neither the FTA, the FEMA, nor the DOT approved any requests or applications from the RTA for federal funding regarding the current Rampart Spur project, and Plaintiffs do not dispute that the RTA suspended further development of the Desire Streetcar project in September 2005, and officially withdrew its

---

[66] *Id.* at p. 4.

[67] *Id.*

[68] Rec. Doc. 57 at p. 1.

[69] *Id.*

[70] *Id.* at p. 2 (citing *Robinson v. St. Tammany Par. Pub. Sch. Sys.*, 983 F. Supp. 2d 835, 844 (E.D. La. Oct. 18, 2013) (Brown, J.); *Cardon Prop. No. 4, LLC v. Fid. Nat'l Ins. Co.*, 58 F. Supp. 3d 645, 646 n.2 (E.D. La. Nov. 7, 2014) (Brown, J.)).

request for federal funding for the project on March 11, 2011.[71] Thus, Federal Defendants aver, "it is undisputed that the Rampart Spur in its current iteration is a purely local project with no federal nexus."[72]

Next, Federal Defendants argue that the motion for summary judgment should not be denied to permit additional discovery.[73] Federal Defendants argue that Plaintiffs did not comply with the technical requirements of Federal Rule of Civil Procedure 56(d), which requires the submission of an affidavit or declaration when a party requests additional time for discovery prior to a ruling on summary judgment.[74] Federal Defendants also contend that the Court should not grant Plaintiffs' Rule 56(d) request because Plaintiffs have not diligently pursued discovery.[75] According to Federal Defendants, Plaintiffs filed this lawsuit on January 12, 2015, and the current Scheduling Order was instituted on July 30, 2015, setting a discovery deadline of February 11, 2016.[76] However, Federal Defendants aver, in the thirteen months between the filing of the lawsuit and the close of discovery, Plaintiffs did not conduct any formal discovery, including taking any depositions pursuant to Rules 30 or 31, propounding interrogatories pursuant to Rule 33, or requests for production pursuant to Rule 34.[77] Federal Defendants claim

---

[71] *Id.*

[72] *Id.*

[73] *Id.* at p. 3.

[74] *Id.* (citing *Finley v. Fla. Par. Juvenile Det. Ctr.*, 2013 WL 1344576, at *6 (E.D. La. Apr. 3, 2013) (Wilkinson, M.J.); *United States v. Roth*, 2012 WL 1014822, at *2 (E.D. La. Mar. 22, 2012) (Lemelle, J.)).

[75] *Id.* (citing *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 700 (5th Cir. 2014); *Patterson v. Blue Offshore BV*, 2015 WL 914919, at *6–*7 (E.D. La. Mar. 3, 2015) (Brown, J.)).

[76] *Id.* at pp. 3–4.

[77] *Id.* at p. 4.

that when Plaintiffs requested deposition dates in January 2016, counsel for Federal Defendants timely provided them on January 29, 2016, but Plaintiffs still had not noticed any depositions by the morning of February 17, 2016.[78] Federal Defendants claim that it was not until the afternoon of February 17, 2016 that Plaintiffs finally served deposition notices, and claim that Plaintiffs still have not engaged in any other discovery.[79] Federal Defendants argue that Plaintiffs have had ample opportunity to conduct discovery and have failed to do so, and thus their Rule 56(d) request should be denied.[80]

Furthermore, Federal Defendants contend, Plaintiffs have not sufficiently articulated why additional discovery is needed.[81] According to Federal Defendants, Rule 56(d) requires the non-moving party to set forth a plausible basis for believing that specified facts probably exist, and to indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.[82] Federal Defendants argue that Plaintiffs have not articulated which questions the witnesses who were deposed were unable to answer or why those answers are necessary for Plaintiffs to oppose the motion for summary judgment.[83] Moreover, Federal Defendants contend, although Plaintiffs identify a few areas where they believe further discovery is necessary and complain that the term "preliminary engineering" was not defined during the depositions, the term in question is a term of art "and even a modicum of online research could have turned up

---

[78] *Id.*

[79] *Id.*

[80] *Id.* (citing *Patterson*, 2015 WL 914919, at *8).

[81] *Id.*

[82] *Id.* (citing *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)).

[83] *Id.* at p. 5.

numerous descriptions of this term, in varying degrees of detail, on the FTA website."[84] Furthermore, Federal Defendants argue, the term was used in Laura Wallace's declaration, filed on June 12, 2015, and "Plaintiffs could have availed themselves of many different methods of discovering the information, rather than waiting to ask a fact witness to define the term during a deposition eight days after the discovery deadline."[85] However, Federal Defendants claim, Plaintiffs never propounded a Rule 30(b)(6) deposition notice.[86]

Federal Defendants also assert that, although Plaintiffs complain that they lack documents pertaining to the allocation of grant funds promulgated by the FTA, Laura Wallace's declaration, filed on June 12, 2015, put Plaintiffs on notice that such documents existed.[87] Nevertheless, Federal Defendants argue, Plaintiffs never propounded a request for production of those documents or a subpoena *duces tecum*, nor have they ever specifically asked the Federal Defendants for those documents.[88] Thus, Federal Defendants argue, Plaintiffs did not carry their burden under Federal Rule of Civil Procedure 56(d), and there is no genuine, disputed issue of material fact in this case.[89] According to Federal Defendants, the only legal question remaining is whether the FTA's involvement in the "preliminary engineering" phase of the Desire Streetcar Project from 1998 to 2003 turned the locally funded, current Rampart Spur project into a "major federal action" under the NEPA, a "federal undertaking" for the purposes of the NHPA, or

---

[84] *Id.*

[85] *Id.* (footnote omitted).

[86] *Id.* at p. 5 n.2.

[87] *Id.* at p. 5.

[88] *Id.*

[89] *Id.* at p. 6.

triggered the application of Section 4(f).[90] Federal Defendants allege that because it is undisputed that there was no federal involvement in the current project and no nexus between the FTA's limited involvement in the Desire Steetcar project more than a decade ago and the current Rampart Spur project, Federal Defendants' motion for summary judgment should be granted.[91]

### III. Law and Analysis

*A.*    ***Legal Standard for Summary Judgment***

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[92] When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[93] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[94] If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[95]

---

[90] *Id.*

[91] *Id.*

[92] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[93] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[94] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[95] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

On a motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[96] Where the non-moving party bears the burden of proof at trial, as here, the party moving for summary judgment may meet its burden by showing the Court that there is an absence of evidence to support the non-moving party's case.[97] Thus, if the moving party satisfies its initial burden, the burden shifts to the nonmoving to "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[98] In doing so, the non-moving party may not rest upon mere allegations or denials in its pleadings, but rather must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[99] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[100] There is no genuine issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[101]

---

[96] *Celotex,* 477 U.S. at 323.

[97] *Id.* at 325.

[98] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[99] *Morris*, 144 F.3d at 380 (citing *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992)); *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[100] *Little*, 37 F.3d at 1075.

[101] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).

## B.        Analysis

Local Rule 56.1 provides that every motion for summary judgment must be accompanied by a separate and concise statement of the material facts which the moving party contends present no genuine issue. Local Rule 56.2 states that any opposition to a motion for summary judgment must include a separate and concise statement of the material facts which the opponent contends present a genuine issue. All material facts in the moving party's statement will be deemed admitted, for purposes of the motion, unless controverted in the opponent's statement. In this case, Plaintiffs did not submit any statement of contested facts. Accordingly, the Court considers the facts recited by Federal Defendants to be uncontested.[102]

Plaintiffs argue, however, that the facts needed to meet their burden of proof at trial are unavailable because insufficient discovery has been undertaken thus far.[103] Federal Defendants respond that Plaintiffs did not comply with the technical requirements of Federal Rule of Civil Procedure 56(d), which requires parties to show by affidavit or declaration that they cannot present facts essential to justify their opposition, and furthermore Plaintiffs have failed to diligently pursue discovery.[104]

Pursuant to Rule 56(d):

(d)      When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1)      defer considering the motion or deny it;

---

[102] *See Frank v. Jones*, No. 12-1102, 2013 WL 1558259, at *1 n.2 (E.D. La. Apr. 10, 2013) (Barbier, J.); *Belala v. Coastal Towing Co.*, No. 01-3137, 2002 WL 31729491, at *1 (E.D. La. Dec. 3, 2002) (Fallon, J.).

[103] Rec. Doc. 54 at pp. 2–3.

[104] Rec. Doc. 57 at p. 3.

(2)     allow time to obtain affidavits or declarations or to take discovery; or

(3)     issue any other appropriate order.

In *Adams v. Travelers Indemnity Co. of Connecticut*, the Fifth Circuit construed Federal Rule of Civil Procedure 56(f), the predecessor to the present-day Rule 56(d),[105] and held that the Rule:

> [A]uthorizes a district court to "order a continuance to permit affidavits to be taken or depositions to be taken or discovery to be had," if the non-movant files affidavits showing that he or she "cannot for reasons stated present by affidavit facts necessary to justify the party's opposition." A non-movant seeking relief under Rule 56(f) must show: (1) why he needs additional discovery and (2) how that discovery will create a genuine issue of material fact. A party "cannot evade summary judgment simply by arguing that additional discovery is needed," and may not "simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts."[106]

Requests for relief pursuant to Rule 56(d) are "generally favored and should be liberally granted."[107] Nonetheless, a "plaintiff's entitlement to discovery before a ruling on a motion for summary judgment is not unlimited and may be cut off when the record shows that the requested discovery will not be likely to produce facts he needs to withstand a summary judgment motion."[108] Indeed, "[i]f it appears that further discovery will not produce evidence creating a genuine issue of material fact, the district court may, in the exercise of its discretion, grant

---

[105] *See* 10B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2740 (3d ed. 2014) ("When Rule 56 was rewritten in 2010, the provisions in Rule 56(f) were moved to a new subdivision (d), without any substantial changes.").

[106] *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 162 (5th Cir. 2006) (citations omitted). *See also Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001) (holding that the nonmoving party "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts," but rather "must show (1) why she needs additional discovery and (2) how that discovery will create a genuine issue of material fact.") (citations omitted).

[107] *Beattie*, 254 F.3d at 606.

[108] *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1443 (5th Cir. 1993).

summary judgment."[109] Furthermore, if the plaintiff "has not diligently pursued discovery . . . [he] is not entitled to relief" under the Rule.[110]

Applying these rules here, the Court first notes that Plaintiffs have failed to comply with the technical requirements of Rule 56(d) because they did not file into the record an affidavit or declaration stating that, for specified reasons, they cannot present facts essential to justify their opposition.[111] Nevertheless, Plaintiffs' memorandum in opposition to the pending motion states that the three depositions taken of Federal Defendants' witnesses, Laura C. Wallace ("Wallace"), Albert Walters ("Walters"), and Jeramé Cramer ("Cramer"), were insufficient because the witnesses began working in their current positions in 2002, 2013, and 2014, respectively, and therefore could not provide answers to some questions regarding events that took place prior to their employment.[112] Furthermore, Plaintiffs argue that documentary evidence requested by Plaintiffs has only been partially produced thus far.[113]

However, Plaintiffs do not indicate who, if anyone, will be able to attest to the facts that Wallace, Walters, and Cramer were allegedly unable to provide. Nor do they indicate even what questions they asked the deponents, and therefore what facts they require in order to meet their burden of persuasion at trial. Plaintiffs do not explain which documents they requested in their notices of deposition or which remain outstanding, other than to indicate that they are

---

[109] *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 305 (5th Cir. 2004).

[110] *Beattie*, 254 F.3d at 606 (declining to consider whether plaintiff has shown why she needs additional discovery to create a genuine issue of fact, because she had not been diligent.).

[111] *See* Fed. R. Civ. P. 56(d).

[112] Rec. Doc. 54 at p. 3.

[113] *Id.*

"documents pertaining to the allocation of grant funds promulgated by the FTA and information about what is meant by 'preliminary engineering.'"[114]

The Fifth Circuit has affirmed orders granting summary judgment in circumstances involving far less delay than is present in this case. For instance, in *Carriere v. Sears, Roebuck, & Co.*, the district court granted summary judgment to the defendants in a case that had been pending for "over four months" before the motion for summary judgment was set for submission.[115] The plaintiffs sought additional time to complete discovery, but "did not explain . . . why they had not completed discovery in the time already allotted," instead averring only that the district court had not yet ruled on a pending motion to remand.[116] Reasoning that facing a pending motion to remand "does not excuse failing to pursue discovery diligently," the Fifth Circuit held that the district court did not abuse its discretion in denying the plaintiffs a further continuance.[117]

Likewise, in *Beattie v. Madison County School District*, the Fifth Circuit affirmed the district court's order granting summary judgment to the defendant, notwithstanding the plaintiff's assertions that she was unaware that she would need to take certain depositions until shortly before the discovery deadline, and that she did not take them earlier because the parties were in settlement negotiations.[118] Reasoning that "a party suspends discovery at his own risk,"

---

[114] *Id.*

[115] 893 F.2d 98, 102 (5th Cir. 1990).

[116] *Id.*

[117] *Id.*

[118] 254 F.3d 595, 606 (5th Cir. 2001).

21

the Fifth Circuit held that the district court "acted within its discretion in concluding that she had not pursued discovery diligently enough to warrant relief under [R]ule 56(f)."[119]

If Plaintiffs have not diligently pursued discovery, they are not entitled to relief under Rule 56(d).[120] Plaintiffs provide no information in their opposition to explain their failure to depose Wallace, Walters, and Cramer, or any other witnesses, at an earlier time. This case has been pending since January 12, 2015.[121] On January 16, 2015, the Court held an expedited hearing on Plaintiff's motion for a temporary restraining order, which the Court denied on January 20, 2015.[122] The Court has already granted a prior request to continue the trial date in this matter.[123] On July 30, 2015, the current Scheduling Order was instituted, setting February 11, 2016 as the deadline for completing discovery.[124] After declining to continue the trial date a second time, the Court met with the parties in a status conference on February 16, 2016,[125] where Plaintiffs represented to the Court that they had not yet pursued discovery because they were trying to save money while the Court considered a pending motion to dismiss, which the Court ultimately denied.[126] Nevertheless, with the consent of the Federal Defendants, the Court

---

[119] *Id.*

[120] *Beattie*, 254 F.3d at 606 (declining to consider whether plaintiff has shown why she needs additional discovery to create a genuine issue of fact, because she had not been diligent.).

[121] Rec. Doc. 1.

[122] Rec. Doc. 22.

[123] Rec. Doc. 30.

[124] Rec. Doc. 43.

[125] Rec. Doc. 52.

[126] Rec. Doc. 44.

continued the submission date of the instant motion in order to allow Plaintiffs additional discovery time, despite the fact that the discovery deadline had already passed.[127]

In short, this Court has repeatedly indulged Plaintiffs' requests for additional time. Nevertheless, Federal Defendants contend, and Plaintiffs do not refute, that in the thirteen months between the time this lawsuit was filed and the close of discovery, Plaintiffs did not conduct *any* formal discovery whatsoever.[128] According to Federal Defendants, Plaintiffs did not request deposition dates until January 2016, and despite receiving dates on January 29, 2016, still had not noticed any depositions as of the morning of February 17, 2016.[129] Moreover, Federal Defendants contend, although Plaintiffs claim that they have not yet received documents pertaining to the allocation of grant funds promulgated by the FTA or delineating the use of grant funds, Plaintiffs were on notice since at least June 12, 2015, through the declaration of Wallace, that such documents existed, but nevertheless never propounded a request for production of documents of a subpoena *duces tecum*.[130] Plaintiffs' conduct reflects a lack of diligence in discovery, and therefore does not warrant a further continuance under Rule 56(d).

Therefore, considering that all the facts asserted by Federal Defendants in their statement of material facts have been deemed admitted for purposes of this motion, and in light of the Court's conclusion that additional discovery is not warranted due to Plaintiffs' failure to diligently pursue discovery, all that remains is to determine whether Federal Defendants are entitled to summary judgment as a matter of law. At the February 16, 2016 status conference,

---

[127] Rec. Doc. 52.

[128] Rec. Doc. 57 at p. 4.

[129] *Id.*

[130] *Id.* at p. 6.

Plaintiffs represented to the Court that the central issue in this case was whether any federal funding had been involved in the building of the Rampart Spur project; if discovery uncovered that none had, Plaintiffs stated, they would voluntarily dismiss their complaint, as no cause of action could accrue without federal funding.

This Court has already addressed the federal statutes at issue in this matter in its prior order denying Federal Defendants' motion to dismiss for failure to state a claim.[131] In summary, NEPA requires that federal agencies consider the environmental consequences of "major Federal actions significantly affecting the quality of the human environment."[132] NEPA's requirements, including the submission of an Environmental Impact Statement, "apply only when the federal government's involvement in a project is sufficient to constitute 'major Federal action.'"[133] However, there is no litmus test to determine what constitutes "major Federal action," nor have federal courts agreed on the amount of federal involvement necessary to trigger NEPA's applicability.[134]

Plaintiffs have alleged that Federal Defendants' statement of material facts reveals that the FTA awarded grant money to the RTA, including funds for a "major investment" study.[135] They also claim that Wallace's declaration reveals that the FTA awarded a grant to the RTA in 2000 in the amount of $3,478,630 for a preliminary engineering/environmental impact study for the Desire Streetcar Line Project, and that further grants were awarded in the amounts of

---

[131] Rec. Doc. 44.

[132] 42 U.S.C. § 4332(2)(C).

[133] *Save Barton Creek Ass'n v. Fed. Highway Admin.*, 950 F.2d 1129, 1133 (5th Cir. 1992).

[134] *Id.* at 1134 (quoting *Village of Los Ranchos de Albuquerque v. Barnhart*, 906 F.2d 1477, 1480 (10th Cir. 1990)).

$500,000 and $1,188,016 in 2001 and 2003, respectively.[136] First, the Court notes that even in their opposition, Plaintiffs do not allege any involvement from the DOT or FEMA in the building or funding of the Rampart Spur. Moreover, to the extent that they allege that additional discovery is needed, they make no mention of facts that they believe will be revealed through additional discovery regarding the involvement of FEMA or the DOT. It does not appear, therefore, that Plaintiffs continue to allege the involvement of either of these federal agencies.

Furthermore, to the extent that Plaintiffs allege any involvement from the FTA, Federal Defendants explain at length that the FTA merely funded studies of a separate project from 1998 to 2003, a portion of which overlaps with the Rampart Spur.[137] However, the uncontested facts also state that FTA has not worked with the RTA on the Desire Streetcar project since 2002–2003, and that the FTA has not approved any requests or applications for funding related to the current Rampart Spur project.[138]

Although no litmus test exists to determine what constitutes "major federal action" under NEPA,[139] preliminary or incidental involvement from the federal government in the development of a project does not necessarily render that project forever federal for purposes of subjecting it to NEPA.[140] The Fifth Circuit in *Atlanta Coalition on Transportation Crisis, Inc. v. Atlanta Regional Commission* has stated that even:

---

[135] Rec. Doc. 54 at p. 2.

[136] *Id.*

[137] Rec. Doc. 48-1 at p. 2.

[138] Rec. Doc. 48-2 at p. 2.

[139] *Save Barton Creek Ass'n v. Fed. Highway Admin.*, 950 F.2d 1129, 1133–34 (5th Cir. 1992).

[140] *See City of Boston v. Volpe*, 464 F.2d 254, 258 (1st Cir. 1972); *see also Save Our Wetlands, Inc. v. Sands*, 711 F.2d 634, 645 (5th Cir. 1983) ("A private act does not become a federal act, albeit a 'major' one, merely

> [T]he presence of federal financial assistance is generally just one factor in the analysis of whether there is sufficient federal control over, responsibility for, or involvement with an action to require preparation of an [Environmental Impact Statement]. . . . Moreover, federal financial assistance to the planning process in no way implies a commitment by any federal agency to fund any transportation project or projects or to undertake, fund, or approve any action that directly affects the human environment.[141]

Therefore, even considering the undisputed fact that, between 1998 and 2003, the FTA funded some preliminary studies of a project that was never completed, and a portion of which overlaps with the Rampart Spur, such minimal and incidental involvement of the federal government does not rise to the level of "major federal action" required to trigger NEPA requirements.

Plaintiffs' NHPA claim fails for similar reasons. The NHPA "requires each federal agency to take responsibility for the impact that its activities may have upon historic resources . . . ."[142] The Fifth Circuit has explained that Section 106 of the NHPA upholds the NHPA's objectives "neither by forbidding the destruction of historic sites nor by commanding their preservation, but instead by ordering the government to take into account the effect any federal undertaking might have on them."[143] Although NEPA's "major federal action" requirement and NHPA's "federal undertaking" requirement are not coterminous,[144] NHPA nevertheless requires federal funding of a project in order for

---

because of some incidental federal involvement.").

[141] 599 F.2d 1333, 1347 (5th Cir. 1979).

[142] *Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215, 224 (5th Cir. 2006).

[143] *United States v. 162.20 Acres of Land*, 639 F.2d 299, 302 (5th Cir. 1981).

[144] *Vieux Carre Prop. Owners, Residents & Assocs., Inc. v. Brown*, 948 F.2d 1436, 1441 (5th Cir. 1991).

the statute's requirements to apply.[145] Because Plaintiffs have presented no evidence of such federal funding for the current Rampart Spur project, their NHPA claim fails as a matter of law.

---

[145] 54 U.S.C. § 306108 (prohibiting federal agencies from approving the expenditure of federal funds on an undertaking without taking into account "the effect of the undertaking on any historic property").

Finally, summary judgment in favor of Federal Defendants is warranted on Plaintiffs' Section 4(f) claim[146] for similar reasons. Section 4(f) of the Department of Transportation Act of 1966 bars federal approval of a transportation project that will use a public park, recreational area, or historic site unless: "(1) there is no prudent and feasible alternative to using that land; and (2) the program or project includes all possible planning to minimize harm" to the area resulting from the use.[147] Section 4(f) does not apply to locally funded projects.[148] Plaintiffs have not provided any evidence suggesting sufficient involvement of federal funds to trigger the requirements of Section 4(f). As such, Plaintiffs' claim pursuant to Section 4(f) fails as a matter of law.

## IV. Conclusion

For the reasons stated above,

**IT IS HEREBY ORDERED** that Federal Defendants' "Motion for Summary Judgment"[149] is **GRANTED**.

**NEW ORLEANS, LOUISIANA,** this 22nd day of March, 2016.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[146] Section 4(f), formerly at 49 U.S.C. § 1653(f), was repealed in 1983 when it was codified without substantive change as 49 U.S.C. § 303. *See also* 23 U.S.C. § 138. The policies section 4(f) engendered, however, are still widely referred to as "section 4(f) matters." *See e.g.*, 23 C.F.R. Part 771 (1991); therefore, the Court will also refer to these policies as "section 4(f)" for the purposes of simplicity.

[147] 49 U.S.C.A. § 303.

[148] *See Riverfront Garden Dist. Ass'n, Inc. v. City of New Orleans*, No. 00-544, 2000 WL 35801851, at *10 (E.D. La. Dec. 11, 2000) (Vance, J.); *see also Monumental Task Comm., Inc v. Foxx*, No. 15-6905, 2016 WL 311822, at *7 (E.D. La. Jan. 26, 2016) ("Section 4(f) applies only if a federally-funded transportation project 'uses' a historic site.") (Barbier, J.).

[149] Rec. Doc. 48.